**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| JOSEPH DORSEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EAGLE TRS 9 LLC, d/b/a HOLIDAY INN RESORT ORLANDO, HERSHA HOSPITALITY MANAGEMENT, LP, d/b/a HHM HOTELS, and INTERCONTINENTAL HOTELS GROUP PLC, d/b/a IHG HOTELS & RESORTS,<br><br>Defendants. | CASE NO.:<br><br><u>CLASS ACTION</u> |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff JOSEPH DORSEY ("Plaintiff"), individually and on behalf of all others similarly situated, hereby files this Class Action Complaint against Defendants Eagle TRS 9 LLC, d/b/a Holiday Inn Resort Orlando, Hersha Hospitality Management, LP, d/b/a HHM Hotels, and Intercontinental Hotels Group PLC, d/b/a IHG Hotels & Resorts, ("IHG" or collectively "Defendants"), and alleges as follows:

## <u>INTRODUCTION</u>

1. This action arises from false and misleading advertising by Defendants, who represented through their websites, reservation confirmation

emails, pre-arrival communications, and other marketing materials that certain signature amenities—including a waterpark, water slides, and a nine-hole mini-golf course—were open, operational, and available to guests at the Holiday Inn Resort Orlando Suites – Waterpark (the "Hotel"), when Defendants knew or should have known that the majority of those amenities were closed and inaccessible due to prolonged, ongoing construction.

2. Plaintiff Joseph Dorsey, a Wisconsin resident, booked and paid for a family hotel stay in reliance on Defendants' representations. Upon arriving at the Hotel in November 2025, Plaintiff discovered that the entire waterpark, all water slides, and the mini-golf course had been physically walled off and were undergoing major construction that had been ongoing for months before his arrival. No advance notice of these closures was provided by any Defendant.

3. Plaintiff brings this action on behalf of himself, and all similarly situated individuals—guests who paid premium prices for stays at the Hotel based on Defendants' false and misleading representations—pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks actual damages, restitution, disgorgement, and all other relief the Court deems appropriate.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because: (a) the amount in controversy exceeds $5,000,000 in the aggregate, exclusive of interests and costs; (b) Plaintiff is a citizen of Wisconsin; and (c) at least one Defendant is a citizen of a state other

than Wisconsin.

5. This Court has personal jurisdiction over all Defendants because each Defendant conducts substantial business in this District, the Hotel is located in this District, and the acts and omissions giving rise to Plaintiff's claims occurred in this District.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and the Hotel at issue is located in Orlando, Florida, within this Division.

## THE PARTIES

7. Plaintiff Joseph Dorsey is, and has been at all times material hereto, an adult citizen and resident of the State of Wisconsin, residing in Sturtevant, Racine County, Wisconsin. Plaintiff engaged in substantial and not isolated commercial activity within the State of Florida, in Orange County, Florida.

8. Defendant Eagle TRS 9 LLC ("Eagle TRS") is a Delaware limited liability company registered to do business in Florida and doing business as Holiday Inn Resort Orlando Suites – Waterpark, located at 14500 Continental Gateway, Orlando, Florida 32821. Eagle TRS owns and/or operates the Hotel and is responsible for the Hotel's representations to prospective guests, its amenity operations, and its direct communications with guests. Eagle TRS is subject to the personal jurisdiction of this Court.

9. Defendant Hersha Hospitality Management, L.P. ("HHM") is a

Pennsylvania limited partnership d/b/a HHM Hotels. HHM serves as the management company for the Hotel, responsible for day-to-day operations, staff, guest communications, marketing decisions, and maintenance and availability of advertised amenities. HHM is registered to conduct business in Florida and is subject to the personal jurisdiction of this Court.

10. Defendant InterContinental Hotels Group PLC ("IHG") is a public limited company organized and existing under the laws of England and Wales, with a principal place of business in Windsor, Berkshire, United Kingdom. IHG does business as IHG Hotels & Resorts and operates the global franchise, reservation, and distribution systems through which the Hotel is marketed and booked by consumers, including Plaintiff. IHG controls and publishes the Hotel's amenity listings, reservation confirmations, and pre-arrival communications. IHG is subject to the personal jurisdiction of this Court pursuant to Fla. Stat. § 48.193 by virtue of its continuous and systematic business activities in Florida, including operating a franchise hotel in this District.

## FACTUAL ALLEGATIONS

11. At all times relevant hereto, Defendants marketed the Hotel on IHG's website (ihg.com), HHM's booking platforms, and Defendants' collective marketing channels as a full-service waterpark resort, with specific, affirmative representations that the following amenities were open and available to guests:

a. A multi-feature outdoor waterpark;

b. Multiple water slides;

c. A nine-hole mini-golf course; and

d. Other related recreational facilities.

12. Defendants charged guests—including Plaintiff—premium room rates above what comparable non-waterpark hotels in the Orlando area commanded, specifically marketing the Hotel as a "waterpark resort" and pricing stays to reflect access to these amenities.

13. The Hotel's listing on IHG's booking platform, where Plaintiff made his reservation, affirmatively listed the waterpark, water slides, and mini-golf course as available amenities with no notation of closure, construction, or limitation.

14. Plaintiff received a reservation confirmation email from Defendants that similarly represented these amenities as available and encouraged Plaintiff to "[c]heck in starts at 4:00 p.m." and that the "resort fee" included "access to most of your amenities," including the waterpark. (*See* Exhibit A, Reservation Confirmation Email.)

15. Prior to Plaintiff's arrival, Defendants transmitted pre-arrival text messages and emails that continued to represent the waterpark as an available amenity, directing Plaintiff to review waterpark hours. At no point did any pre-arrival communication from any Defendant disclose that the waterpark was closed for construction.

16. Unbeknownst to Plaintiff and class members, the Hotel's waterpark, water slides, and mini-golf course had been closed and walled off due to major

construction for months prior to Plaintiff's November 2025 stay and, upon information and belief, for the entire relevant class period.

17. The construction closure was not a sudden or unforeseeable event. Upon information and belief, Defendants planned, scheduled, and commenced the construction well in advance of the class period, and Defendants' own employees and management were aware of the closure months before any affected guests arrived.

18. Plaintiff arrived at the Hotel on or about November 8, 2025, accompanied by his family, including minor children who were among the primary intended users of the waterpark. Upon arrival, Plaintiff discovered that the entire waterpark was physically enclosed behind construction barriers and was entirely unavailable for guest use.

19. Similarly, the nine-hole mini-golf course and all associated water facilities were closed, walled off, and unavailable—accessible only to construction crews, not hotel guests.

20. Plaintiff had paid a premium resort fee specifically advertised to include access to these amenities. Defendants charged and retained this fee without providing the corresponding amenities. (*See* Exhibit I, Room Receipt).

21. On or about November 6, 2025, two days before Plaintiff's scheduled arrival, Plaintiff contacted Defendants via their website chat function to inquire about the waterpark. A representative of Defendants confirmed the hours of the waterpark without disclosing that it was closed. (*See* Exhibit B, November 6, 2025,

Chat Transcript.)

22. On or about November 7, 2025, Plaintiff texted Defendants using the same phone number from which he had received pre-arrival communications. Defendants' response did not disclose the waterpark closure. (*See* Exhibit C, November 7, 2025, Text Exchange.)

23. On or about November 8, 2025, Plaintiff again contacted Defendants through their website chat function. During that exchange, Defendants' representative for the first time disclosed that the waterpark was closed for construction—but did not offer any refund, alternative accommodations, or meaningful remedy. (*See* Exhibit D, November 8, 2025, Chat Transcript.)

24. On or about November 8, 2025, Plaintiff texted Defendants again, and Defendants acknowledged that the waterpark had been closed for "a long time" due to construction and stated: "We are also renovating our water parks, and we'll make sure this information is conveyed to future guests." (*See* Exhibit E, November 8, 2025, Text Exchange.)

25. This belated disclosure confirmed that Defendants had known of the closure for an extended period and had deliberately or recklessly failed to update their marketing, reservation system, confirmation emails, pre-arrival communications, or amenity listings to reflect the closure.

26. On or about November 9, 2025, Plaintiff initiated a chat session with Defendants' representatives via their website and submitted the following complaint:

> "I want to know why I received a text from hotel management confirming the waterpark was open for my stay, and it was clearly not open. I can't figure out how to attach the clearly dishonest text . . . I would never have stayed here without waterpark access. That was the whole reason for our vacation. Mini golf and waterslides, Kids are devastated.
>
> ...
>
> Even at check m they told us waterpark hours Woke up and went to waterpark and they told us 1t had been closed for a long time due to construction."

(Exhibit F, November 9, 2025, Chat Transcript; *see also* Exhibit G (public reviews demonstrating the length of construction and similar accounts of misrepresentation of current amenities)).

27. At no point before Plaintiff's departure did any Defendant offer an adequate remedy to compensate Plaintiff for the absence of the advertised amenities.

28. Upon information and belief, Defendants' practice of advertising the waterpark, water slides, and mini-golf course as available—while knowingly failing to disclose that they were closed for construction—affected all guests who booked and stayed at the Hotel during the period in which these amenities were closed (the "Class Period"). (*See* Exhibit H, Trip Advisor Reviews).

29. Defendants' conduct was uniform and systematic: the same website listings, booking confirmations, resort fee representations, and pre-arrival communications were transmitted to all class members without disclosure of the closures.

## FED. R. CIV. P. 9(b) ALLEGATIONS

30. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

31. **WHO:** Defendants Eagle TRS 9 LLC, d/b/a Holiday Inn Resort Orlando; Hersha Hospitality Management, LP, d/b/a HHM Hotels; and InterContinental Hotels Group PLC, d/b/a IHG Hotels & Resorts. IHG published the Hotel's amenity listings on ihg.com and transmitted the reservation confirmations and pre-arrival communications at issue; HHM, as the Hotel's management company, controlled the Hotel's marketing, booking platforms, and guest communications; and Eagle TRS, as the owner and/or operator of the Hotel, was responsible for the Hotel's representations to prospective guests and its direct communications with guests, including through the chat and text representatives who communicated with Plaintiff.

32. **WHAT:** Defendants' conduct was deceptive because they represented to consumers that the Hotel's waterpark, water slides, and nine-hole mini-golf course were open, operational, and available to guests, and that the mandatory resort fee included "access to most of your amenities," including the waterpark, when in fact those amenities had been closed and walled off for

construction for months. Defendants failed to disclose these closures in any pre-booking, booking, or pre-arrival communication. Defendants knew that these representations were false because Defendants planned, scheduled, and commenced the construction well in advance of the Class Period, and Defendants' own representative admitted that the waterpark had been closed for "a long time." Yet Defendants continued to market the Hotel as a "waterpark resort," to list the closed amenities as available, and to charge and retain resort fees premised on access to those amenities.

33. **WHEN:** Defendants engaged in this deceptive conduct continuously throughout the Class Period, including at the time of booking, in reservation confirmations, in pre-arrival communications, and at check-in. As to Plaintiff specifically, Defendants made the misrepresentations at the time Plaintiff booked his reservation through IHG's booking platform; in the reservation confirmation email sent to Plaintiff (*See* Exhibit A); on or about November 6, 2025, when Defendants' chat representative confirmed the waterpark's hours without disclosing the closure (*See* Exhibit B); on or about November 7, 2025, when Defendants responded to Plaintiff's text message without disclosing the closure (*See* Exhibit C); and on or about November 8, 2025, when Hotel staff provided Plaintiff with waterpark hours at check-in. Defendants did not disclose the closure until November 8, 2025—after Plaintiff had already booked, paid for, and arrived for his stay. (*See* Exhibits D and E.)

34. **WHERE:** Defendants' misrepresentations were made on IHG's

website (ihg.com) and booking platform, where Plaintiff made his reservation; on HHM's booking platforms and Defendants' collective marketing channels; in Defendants' reservation confirmation emails and resort fee disclosures; in Defendants' pre-arrival text messages and emails; through Defendants' website chat function; and at the Hotel's front desk at check-in. Because Defendants transmitted the same website listings, booking confirmations, resort fee representations, and pre-arrival communications to every guest, these misrepresentations were viewed by every class member, including Plaintiff, before and at the time of booking and before arrival.

35. **HOW:** Defendants affirmatively listed the waterpark, water slides, and mini-golf course as available amenities with no notation of closure, construction, or limitation; represented that the resort fee included access to the waterpark; directed guests to review waterpark hours in pre-arrival communications; and, in response to Plaintiff's direct inquiries, confirmed the waterpark's hours without disclosing the closure—all while the amenities were closed and walled off for construction. Defendants' own representative confirmed the omission, stating: "We are also renovating our water parks, and we'll make sure this information is conveyed to future guests." And as discussed in detail throughout the Complaint, Plaintiff and class members read and relied on Defendants' misrepresentations regarding the availability of the Hotel's amenities in booking their stays and in paying the Hotel's premium room rates and resort fees.

36. **WHY:** Defendants misrepresented the availability of the Hotel's signature amenities to induce consumers like Plaintiff to book stays at the Hotel, to select the Hotel over alternative accommodations, and to pay premium room rates and mandatory resort fees above what comparable non-waterpark hotels in the Orlando area commanded. These representations were material: as Plaintiff told Defendants, he "would never have stayed here without waterpark access," which was "the whole reason for our vacation." Accordingly, due to Defendants' misrepresentations, Plaintiff and class members paid a premium for their stays that they would not have paid, or would have paid substantially less for, had they known the amenities were closed.

37. **INJURY:** Plaintiff and class members were injured by Defendants' conduct in that they would not have booked stays at the Hotel, or would not have booked them on the same terms or paid the same room rates and resort fees, had they known that the Hotel's waterpark, water slides, and mini-golf course were closed for construction. Plaintiff and class members received lodging and amenities worth substantially less than what Defendants represented and lost the benefit of their bargain.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action on behalf of himself, and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or 23(b)(3).

39. **Class Definition.** Plaintiff proposes the following Class:

> All persons who paid for one or more nights' lodging at the Holiday Inn Resort Orlando Suites – Waterpark, located at 14500 Continental Gateway, Orlando, Florida 32821, during the period in which the Hotel's waterpark, water slides, and/or mini-golf course were closed for construction (the "Class Period"), and who were not informed of such closure(s) prior to booking, from the earliest allowable time through the date of certification.

40. Excluded from the class are the Court and its officers, employees and relatives, Defendants and their parents, subsidiaries, affiliates, employees and co-conspirators, and government entities.

41. **Numerosity (Rule 23(a)(1))**. The Class is so numerous that joinder of all members is impracticable. The Hotel has hundreds of guest rooms and operates at high occupancy rates, particularly during peak Orlando tourism periods. During the Class Period, which spans multiple months, the Class likely includes thousands of individual guests. The precise number of class members is ascertainable from Defendants' reservation and booking records.

42. **Commonality (Rule 23(a)(2))**. There are numerous questions of law and fact common to the Class that predominate over any individual issues, including but not limited to:

a. Whether Defendants represented to guests that the waterpark, water slides, and mini-golf course were open and available;

b. Whether those amenities were, in fact, closed during the Class Period;

c. Whether Defendants knew or should have known of the closures;

d. Whether Defendants' failure to disclose the closures was a deceptive, unfair, or misleading act or practice in violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 et seq.;

e. Whether Defendants breached express warranties made to guests;

f. Whether Defendants breached implied warranties of merchantability and fitness for a particular purpose;

g. Whether Defendants were unjustly enriched at class members' expense; and

h. The appropriate measure of damages.

43. **Typicality (Rule 23(a)(3)).** Plaintiff's claims are typical of those of the Class. Plaintiff, like all class members, booked a stay at the Hotel based on Defendants' uniform representations, paid a premium price that included access to the advertised amenities, and suffered economic harm when those amenities were unavailable. Plaintiff's claims arise from the same course of conduct as those of all class members and are based on the same legal theories.

44. **Adequacy (Rule 23(a)(4)).** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to those of other class members. Plaintiff is represented by counsel experienced in consumer protection and complex class action litigation.

45. **Predominance and Superiority (Rule 23(b)(3)).** Common questions of law and fact predominate over any questions affecting only individual

members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

a. Individual class members' damages, while real, are modest in amount and unlikely to justify the cost of individual litigation;

b. Class members may be unaware of their legal rights;

c. Concentrating litigation of these claims in a single forum is efficient and avoids inconsistent results; and

d. There are no apparent difficulties in managing this case as a class action.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### Fla. Stat. § 501.201 *et seq.* ("FDUTPA")

46. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and brings this Count on behalf of himself and the Class.

47. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

48. Defendants are engaged in "trade or commerce" as defined by FDUTPA, Fla. Stat. § 501.203(8), by operating and marketing a hotel and resort in the State of Florida.

49. Defendants engaged in unfair and deceptive acts and practices by:

a. Affirmatively representing on their websites, booking platforms, reservation confirmations, and pre-arrival communications that the Hotel's waterpark, water slides, and mini-golf course were open, operational, and available when, in fact, those amenities were closed due to construction for a prolonged and planned period of time;

b. Charging guests, including Plaintiff and class members, mandatory resort fees that were expressly stated to include access to amenities—including the waterpark—that were unavailable;

c. Failing to disclose the closure of these amenities in any pre-booking, booking, or pre-arrival communication, despite knowing of the closure for months; and

d. Continuing to market the Hotel as a "waterpark resort" with premium amenities while those amenities were completely unavailable.

50. Defendants' conduct was likely to deceive consumers acting reasonably under the circumstances. A reasonable consumer relying on Defendants' representations would understand that the advertised amenities were available for use during their paid stay.

51. Plaintiff and class members suffered actual damages as a direct result of Defendants' deceptive conduct, including the diminished value of the lodging received versus the lodging promised, and the loss of the benefit of the bargain.

52. This action is timely pursuant to the four-year limitations period under Fla. Stat. § 95.11(3)(f).

**COUNT II**
**FRAUDULENT MISREPRESENTATION / FALSE ADVERTISING**

53. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Defendants made false statements of material fact to Plaintiff and class members, including without limitation, the representations described in paragraphs 11 through 27 above, that the Hotel's waterpark, water slides, and mini-golf course were open and available for guest use.

55. Defendants knew these representations were false, or made them with reckless disregard for their truth, because Defendants' own management and staff were aware that the amenities had been closed for construction for months during the Class Period.

56. Defendants made these misrepresentations with the intent to induce Plaintiff and class members to book stays at the Hotel and pay the Hotel's premium rates and resort fees.

57. Plaintiff and class members justifiably relied on Defendants' misrepresentations in booking their stays, selecting the Hotel over alternative accommodations, and paying premium prices.

58. As a direct and proximate result of Defendants' misrepresentations, Plaintiff and class members suffered actual economic damages, including but not limited to: (a) the difference in value between the lodging and amenities promised and those actually provided; (b) loss of the benefit of the bargain; (c) out-of-pocket

losses; and (d) losses resulting from unavailable amenities and associated disruption.

## COUNT III
## BREACH OF EXPRESS WARRANTY

59. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

60. Through their websites, reservation confirmation emails, resort fee disclosures, and pre-arrival communications, Defendants made specific, affirmative representations and promises—including that the Hotel's waterpark, water slides, mini-golf course, and other described amenities were open and available—that formed the basis of the bargain between the parties.

61. These affirmations of fact and promises constituted express warranties pursuant to Florida law.

62. Defendants breached these express warranties: the waterpark, water slides, and mini-golf course were not open or available to Plaintiff and class members during their stays, contrary to Defendants' explicit representations.

63. Plaintiff and class members suffered damages as a direct and proximate result of Defendants' breach of express warranty. This claim is timely under Fla. Stat. § 95.11(2)(b) (four-year limitations period).

## COUNT IV
## BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE

64. Plaintiff incorporates by reference all preceding paragraphs as if fully

set forth herein.

65. Defendants offered and sold lodging at the Hotel bundled with premium amenities—including waterpark access and mini-golf—marketed at a premium price for the particular purpose of family resort recreation. Plaintiff and class members selected Defendants' Hotel specifically to use those amenities, and Defendants knew or should have known of this intended purpose.

66. The lodging and amenities package delivered to Plaintiff and class members was not fit for its ordinary purpose and was not fit for the particular purpose for which it was sold, because the essential promised amenities were entirely unavailable.

67. Defendants breached the implied warranties of merchantability and fitness for a particular purpose.

68. Plaintiff and class members sustained damages as a result. This claim is timely under Fla. Stat. § 95.11(2)(b).

## COUNT V
## UNJUST ENRICHMENT

69. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and pleads this Count in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2).

70. Plaintiff and class members conferred a monetary benefit upon Defendants by paying premium room rates and mandatory resort fees that were expressly premised on access to the Hotel's waterpark, water slides, mini-golf

course, and related amenities.

71. Defendants voluntarily accepted and retained these payments while knowingly failing to provide the amenities for which payment was made.

72. Under the circumstances, it would be inequitable and unjust for Defendants to retain the full amount of payments received without providing commensurate amenities in return.

73. Plaintiff and class members have no adequate remedy at law with respect to this alternative claim.

74. Defendants are obligated to disgorge and return to Plaintiff and class members the portion of their payments attributable to amenities not provided. This claim is timely under Fla. Stat. § 95.11(3)(k).

## DEMAND FOR JURY TRIAL

75. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joseph Dorsey, individually and on behalf of the proposed Class, respectfully requests that this Court:

a. Enter an order certifying the Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as Class Representative, and appointing undersigned counsel as Class Counsel;

b. Enter judgment in favor of Plaintiff and the Class against all Defendants, jointly and severally;

c. Award all actual, compensatory, economic, consequential, incidental, reliance, and expectancy damages sustained by Plaintiff and the Class, including without limitation: (i) the difference in value between the lodging and amenities promised versus those actually provided; (ii) loss of the benefit of the bargain; (iii) out-of-pocket losses; (iv) losses resulting from unavailable amenities and associated disruption; and (v) all other recoverable monetary damages under Florida law;

d. Award restitution of all monies paid by Plaintiff and class members to Defendants;

e. Award disgorgement of all revenues and benefits wrongfully obtained through Defendants' deceptive, unfair, or unlawful conduct;

f. Award prejudgment and post-judgment interest as permitted by law;

g. Award attorneys' fees and costs pursuant to FDUTPA, Fla. Stat. § 501.2105, and any other applicable provision;

h. Grant injunctive and/or declaratory relief requiring Defendants to accurately disclose amenity closures on all booking platforms, confirmation emails, and pre-arrival communications on a going-forward basis; and

i. Grant such other and further relief as this Court deems just and

proper.

Dated: September 29, 2026

Respectfully submitted:

*/s/ Christopher Hudon*
Christopher Hudon, Esq.
Florida Bar No.: 123845
Amy L. Judkins, Esq.
Florida Bar No.: 125046
Edmund A. Normand, Esq.
Florida Bar No.: 865590
**NORMAND, JUDKINS AND COUCH PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
T: 407-603-6031
E: a.judkins@njc.law
E: c.hudon@njc.law
E: ed@ednormand.com
E: service@njc.law

Michael F. Brown, Esq. (*pro hac vice forthcoming*)
WI State Bar No.: 1041753
**DVG Law Partner LLC**
P.O. Box 645, Neenah, WI 54957
(*preferred mailing address*)
4321 W. College Ave., Suite 200
Appleton, WI 54914
T: 920-848-2265
E: mbrown@dvglawpartner.com

*Attorneys for Plaintiff and the Putative Class*